**The CHOSIN FEW, INC., a Massachusetts Non–Profit Corporation, Plaintiff,**

v.

**Winslow SCOTT; Richard Oly; and Harold Slawson, Defendants.**

v.

**Haywood Savings Bank, Inc., as Constructive Trustee Defendant.**

**The Hometown Bank d/b/a Clyde Savings Bank, a division of The Hometown Bank, Plaintiff,**

**and**

**Manert Kennedy; Charles W. Griffin; Bill Bartha; Arthur W. Wilson; Andrew J. Kovacs; Wayne F. Murphy; John Edward Gray; Richard H. Sharp; Richard R. Seward; Donald P. Ivers; Robert W. Reichard; Lynn F. Williams; James L. McMinn; J. Robert Lunney; Russell L. Palmer; Donald B. Williams; Walter Hammon; Jean P. White; Robert L. Dosh; Gerald F. Hierro; John F. Shovar; Clyde**

H. Queen, Sr.; Frank Torres; Olin R. Brooks, Jr.; Wayne E. Faulkner; Raymond A. Johnson Forrest Heistermann; David W. Bessire; Richard P. Halbach Jim McKee; Vincente L. Suarez; Ed Reeves; Richard A. Suarez; Richard C. Grassman; John A. Powers; Tom Fairchild; Robert J. Strall; and Charles A. Straw, Intervenor–Plaintiffs,

v.

The Chosin Few, Inc.; Winslow Scott; Richard Oly; and Harold Slawson, Defendants.

Roger L. French, Plaintiff,

v.

The Chosin Few, Inc., Defendant.

Nos. CIV.1:98CV59, CIV.1:99CV267, CIV.1:00CV294.

United States District Court, W.D. North Carolina, Asheville Division.

June 24, 2002.

Gary L. Beaver, Adams, Kleemeier, Hagan, Hannah & Fouts, Greensboro, NC, Roger L. French, Law Office of Roger L. French, Boston, MA, Sean P. Devereaux, Asheville, NC, for the Chosin Few, Inc.

Wyatt S. Stevens, P.A., Roberts & Stevens, P.A., Asheville, NC, for Walter Jack Childs, Joseph Reynolds.

Stephen M. Cox, Robinson, Bradshaw & Hinson, P.A., Rock Hill, SC, for Frank Kerr.

T. Douglas Wilson, Jr., McGuire, Wood & Bissette, P.A., Asheville, NC, for Roger L. French.

Craig D. Justus, Asheville, NC, James Gary Rowe, P.A., Asheville, NC, Michael S. Greco, Catherine M. Stockwell, Hill & Barlow, Boston, MA, fOr Winslow Scott, Richard Oly, Harold Slawson, Haywood Savings Bank.

### MEMORANDUM AND ORDER

THORNBURG, District Judge.

**THESE MATTERS** are before the Court on motions filed by The Chosin Few, Inc., (CFI) to confirm the interim board's decision on attorney's fees and for an award of attorney's fees and expenses filed in Civil Action Nos. 1:98cv59 and 1:99cv267, and on motion by CFI, for sanctions filed in Civil Action No. 1:00cv294. After review of the entire record, including the parties' briefs on all aspects of the issues and argument from counsel at the hearing held March 25, 2002, the Court grants each of the motions by CFI.

### I. FACTUAL AND PROCEDURAL HISTORY

This litigation began in 1998 with the filing of *The Chosin Few, Inc. v. Scott,* Civil No. 1:98cv59, which pitted one faction of CFI's Board of Directors, led by Ken Santor and Frank Kerr (Kerr faction)

against another, led by Winslow Scott and Richard Oly (Oly faction). These two factions had previously devolved into open hostility by the spring of 1997. *See* Memorandum and Order, filed November 21, 2001, in *French v. The Chosin Few, Inc.,* Civil No. 1:00cv294, at 2. Each faction held separate board meetings and passed competing resolutions. The Kerr faction, represented by Attorney Roger French (French), filed suit against certain leaders of the Oly faction, purporting to act on behalf of CFI.[1] The case proceeded to a bench trial before the undersigned on November 19, 1998. During the trial the parties reached an agreement which was to settle the dispute. Unfortunately, it did not.

The agreement between the parties in the original case was embodied in a Judgment entered by the Court on January 7, 1999. *See,* Judgment, filed January 7, 1999, in *The Chosin Few, Inc. v. Scott,* Civil No. 1:98cv59. That Judgment set forth a number of conditions which are material to the pending motions, including the composition of the board of directors as of November 19, 1998. *Id.,* at 2. The Judgment clearly stated, however, that

[p]ending elections as set forth herein, this Board shall not be permitted to conduct any business of the corporation *except in the case of emergency action.* Such emergency action shall be reported to counsel for the parties to this litigation *prior* to any action being taken. *Id.* (emphasis added). The Judgment required the formation of a nominating committee which would nominate eight candidates for the board of directors to be voted on by the membership. It also provided for the publication of *The Chosin Few News Digest (News Digest)* and allowed each candidate for the board to submit his

biography to be published in the *News Digest* along with the ballot. These biographies, however, were not permitted to contain "any reference to the position of the candidate concerning this litigation." *Id.,* at 3. The Judgment also contained the specific prohibition that "[n]o derogatory or defamatory letters or statements shall be published in any publication of the [*News Digest* ] during the [period between entry of the Judgment and election of a new board]." *Id.,* at 5.

Kerr and his faction, with the aid and advice of French, began to work to undermine the spirit and the letter of the Judgment almost immediately. In a series of letters from Kerr to French in February 1999, Kerr outlines his plans to retake control of the organization. His basic tactic was to take action as he saw fit, regardless of the Judgment. *See* Exhibit 12, Letter from Frank Kerr to Roger French, dated February 10, 1999, *attached to* Defendant's Motion for Summary Judgement, filed in Civil No. 1:00cv294 ("I would like to handle this according to a favorite tactic of yours—and now mine—as a *fait accompli.*").

In response to these allegations that Kerr, acting on French's advice, attempted to avoid the requirements of the Judgment, French submitted an affidavit from Kerr wherein he avers that

[a]t no time did Attorney French intend that a tactic of *fait accompli* would be employed in disregard of any Court orders or judgments. Any reference I made in the past to such tactics was intended by me to mean that if The Chosin Few's activities or intended activities were already in compliance with the Court's orders, it made no sense to go to Court to get permission for some-

---

1. As detailed in the ruling on summary judgment, the Court refrains from making an ultimate determination about the authority of

either faction to take action on behalf of CFI at the 1997 board meetings.

thing about which we already were permitted to do.

*See,* Affidavit of Frank Kerr, *attached to* Plaintiff's Opposition to Defendant's Motion for Summary Judgment, filed October 5, 2001, in Civil No. 1:00cv294, ¶ 23. This contention is in direct contradiction to an affidavit which Kerr submitted to this Court in lieu of his appearance at a show cause hearing. Affidavit of Frank Kerr, filed March 27, 2000, in consolidated Civil Nos. 1:98cv59 & 1:99cv267. It is also plainly contradicted by the text of the letters. The Court finds that the only reasonable interpretation of Kerr's comments is that French had instructed him on what French perceived to be the tactical advantage of the *"fait accompli," i.e.,* if an action had already taken place before it came to the attention of the Court or the Oly faction, then this was acceptable conduct.

Other letters from Kerr to French support the conclusion that Kerr sought to avoid the Judgment and regain control of CFI. Kerr requested that French ask this Court to cite Winslow Scott (Scott), the out-going executive director of CFI, for contempt. He openly sought to convert the election of directors contemplated by the Judgment into a referendum on the very conflict which the Judgment was intended to put to rest. *See,* Exhibit 12, *supra.*

A series of letters from Kerr to French shows that Kerr had determined to delay and obstruct execution of the terms of the Judgment in the hopes that he and his faction could regain control of CFI. *See,* Exhibits 12–14, *attached to* Defendant's Motion for Summary Judgment, filed in Civil No. 1:00cv294. Meanwhile, the Oly faction of the board of directors was unable to get any useful responses from the Kerr faction so as to comply with the Judgment. *See,* Defendants' Motion in the Cause, filed March 17, 1999, in Civil No. 1:98cv59. In addition to agreeing on a slate of candidates to be directors of CFI, the nominating committee was charged with selecting a person or organization to supervise the counting of ballots. As a result of the Kerr faction's efforts, neither of these goals were met. For example, one of the Oly faction's suggestions to supervise the election was the accounting firm of Cansler & Johnson, P.L.L.C., located in Asheville, North Carolina. This suggestion was rejected by French for the stated reason that "Ashville (sic) is too small a town." *See, id.,* at Exhibit 3A, Letter from Howard Mason to Harry Hogan, dated March 8, 1999. Asheville's size had no bearing on that firm's ability or neutrality in supervising such an election. The Court concludes that French's stated reason for opposing Cansler & Johnson was merely a pretext masking the ultimate goal of obstructing progress in effectuating the Judgment.

In March 1999, Kerr took steps to acquire control of the organization's finances. Purporting to act under the "emergency action" provision described in the Judgment, Kerr attempted to close five CFI accounts with The Hometown Bank. *See,* Exhibit 14, Letter dated March 19, 1999, from French to Clyde Savings Bank, *attached to* Defendant's Motion for Summary Judgment, filed in Civil No. 1:00cv294. Over the strenuous objection of some members of the board, Kerr obtained a resolution, signed by his faction of the board of directors, authorizing him to take over operation of the corporation. *Id.,* at Exhibits 15, 17, 18. The Oly faction filed an addendum to its Motion in the Cause, along with a motion for preliminary injunction and appointment of a special master, seeking relief from Kerr's attempts to circumvent the Judgment utilizing French's services. *See,* Defendants' Addendum to Motion in the Cause, filed March 19, 1999, and Defendants' Motion for Preliminary Injunction and Appoint-

ment of Master, filed June 4, 1999, in Civil No. 1:98cv59. Seeking to avoid Court involvement in the operation of the corporation, the undersigned declined to grant the relief sought. Orders, dated March 24, 1999 and July 7, 1999, in Civil No. 1:98cv59. In response to the Court's Orders, French filed a motion for Rule 11 sanctions on behalf of The Chosin Few, Inc., and the Kerr faction against the Oly faction. Motion for Sanctions, filed July 13, 1999, in Civil No. 1:98cv59. The Court concluded this motion to be "void of merit," and as such it was denied. Order, filed July 22, 1999, in Civil No. 1:98cv59. Kerr sent copies of the Court's orders to CFI board members claiming that, "[t]he federal judge governing our affairs has upheld the actions and decisions of the majority of directors and me to date, including the newly approved emergency resolutions...." Exhibit 21, Letter from Frank Kerr to Board of Directors, The Chosin Few, dated April 5, 1999, *attached to* Defendant's Motion for Summary Judgment, filed in Civil No. 1:00cv294.

In another effort to delay the election and attempt to take complete control of CFI, Kerr attempted to redirect the incoming mail for CFI from North Carolina to Massachusetts. Despite the fact that the Judgment clearly stated that Scott was to continue to handle the "day to day" operations of the organization, French served as Kerr's attorney in a postal dispute over the proper delivery address of CFI's mail. A judicial officer for the United States Postal Service ruled that under the terms of the Judgment the organization's mail was properly routed to Scott's address in North Carolina until the election of a new slate of directors occurred. *See, id.,* at Exhibit 28, Postal Service Decision, dated January 6, 2000.

As a result of Kerr's attempts, at all times based on the advice of French, to gain control of financial assets and records of CFI, The Hometown Bank, d/b/a Clyde Savings Bank, filed an interpleader action in April 1999 in the General Court of Justice, Superior Court Division of Buncombe County, North Carolina, submitting those funds to that court for a determination of rightful ownership. A group of CFI members calling themselves "members in good standing" joined together to intervene in the state court action seeking to enforce the terms of the Judgment. The Intervenor–Plaintiffs moved for and obtained a preliminary injunction prohibiting any party to that litigation from publishing "any communication or other information that Kenneth West has been selected to serve as the third member of the nominating committee." Preliminary Injunction Order entered by Superior Court Judge Loto G. Caviness, filed December 8, 1999, *attached to* Notice of Removal filed Civil No. 1:99cv267; Exhibit 30, *attached to* Defendant's Motion for Summary Judgment, filed in Civil No. 1:00cv294. The action was subsequently removed to this Court and consolidated with the original case. *The Hometown Bank, d/b/a Clyde Savings Bank and Manert Kennedy, et al., v. The Chosin Few, Inc.,* Civil No. 1:99cv267.

Although the December 1999 issue of the *News Digest* did not violate the literal terms of the state court's order, it was clearly at odds with the intent of that injunction. Furthermore, it violated this Court's Judgment both in letter and in spirit by the publication of "defamatory or derogatory" statements about Scott and the Oly faction. *See,* Exhibit 33, December 1999 issue of *The Chosin Few News Digest, attached to* Defendant's Motion for Summary Judgment, filed in Civil No. 1:00cv294, at 6, 22. In an affidavit filed in response to the Defendant's motion for summary judgment, Kerr averred that French advised him not to include the derogatory information in a "Chronicle" of events to be published in the *News Digest*

as reflected in a draft Kerr had provided to French. *See* Kerr Affidavit, *attached to* Plaintiff's Opposition to Defendant's Motion for Summary Judgment, filed in Civil No. 1:00cv294, ¶ 24 and at Exhibit C *attached to* Kerr Affidavit. Both of Kerr's affidavits agree, however, that the final version which was published in the *News Digest* was edited and/or authored by French. *Id.,* ¶¶ 24, 25; Kerr Affidavit, filed March 29, 2000, in consolidated Civil Nos. 1:98cv59 & 1:99cv267, ¶ 14; *see also,* Exhibit 33 *attached to* Defendant's Motion for Summary Judgment, filed in Civil No. 1:00cv294. The final version of the December 1999 *News Digest* including the comments drafted by French "clearly violate[d] the undersigned's Order that no derogatory or defamatory statements shall be published." Order, filed February 24, 2000, in consolidated Civil Nos. 1:98cv59 & 1:99cv267, at 4.

In that same Order, the undersigned directed that Frank Kerr, Winslow Scott, Harold Slawson, Richard Oly, and each of the individual members of the board of directors named in the Court's Judgment of January 7, 1999, appear before the Court and show cause why they should not be held in contempt for violating the terms of the Judgment. *Id.* The Court further ordered that the attorneys for the respective parties file a statement of the assets of CFI, including bank accounts and the location thereof; that the attorneys were forbidden to take any further action on behalf of the corporation related to those assets; that no money even arguably belonging to CFI was to be used to pay any attorney fees; and that all monies received as dues to CFI were to be turned over to Edward L. Bleynat, Jr. (Bleynat), counsel for the Intervenor–Plaintiffs to be held in escrow. *Id.,* at 4–5.

After the entry of this Order, Kerr sent French two checks totaling $7,400. *See* Exhibits 37C, 39, *attached to* Defendant's Motion for Summary Judgment, filed in Civil No. 1:00cv294. Despite the Court's February 24, 2000, Order, French declined to reveal the existence of these funds or to transfer them to the escrow account. *See, id.,* at Exhibits 38C, D, and E, Exhibits 39–40. French did not appear at the show cause hearing held March 27, 2000, when the Court heard evidence of the existence of these funds. Two attorneys who attended the show cause hearing, E. Thomison Holman and Stephen M. Cox, corresponded with French and warned him of the Court's threat of imposing sanctions if he did not comply with the February 24, 2000, Order to disburse the $7,400. *See, id.,* at Exhibit 39. On March 31, 2000, French filed a report of CFI's assets with the Court, in which he stated that he had received the $7,400 before he had been apprised of the Court's February 24, 2000, Order and requested the Court provide "clarification" that it intended to "disgorge[ ][him] of lawfully earned fees." *See* Report to the Court of The Chosin Few, Inc.'s Assets and Prior Compliance with Court Orders and Request for Clarification of the Court's March 27, 2000 Bench Order, filed March 31, 2000, in consolidated Civil Nos. 1:98cv59 & 1:99cv267, at 4–5. In an Order filed April 3, 2000, the Court provided such clarification and directed French pay the $7,400 into the escrow account maintained by Edward Bleynat on or before April 7, 2000, or face possible civil contempt for his failure to do so. Finally on April 7, 2000, French forwarded two checks totaling $7,400 to Bleynat to be deposited to the escrow account; however, French endorsed the checks as "without recourse" and asserted an attorney's lien on all of those funds. Report of Escrow Agent to the Court, filed April 13, 2000, in consolidated Civil Nos. 1:98cv59 & 1:99cv267; *see also,* Exhibit 42 *attached to* Defendant's Motion for Summary Judgment, filed in Civil No. 1:00cv294.

French's action forced the Court to enter yet another order permitting Bleynat to deposit the checks and nullifying any purported attorney's lien on these funds. Order, filed April 14, 2000, in consolidated Civil Nos. 1:98cv59 and 1:99cv267.

In response, French avers that the source of the money in question was donations made by individual CFI members to Kerr in support of his efforts to regain control of the organization. As such, French argues that this $7,400 was not covered by the terms of the Court's orders. This factual contention is inaccurate. *See,* Exhibits 69A–B *attached to* Defendant's Reply Brief in support of Motion for Summary Judgment, filed October 22, 2001, in Civil No. 1:00cv294. The donations and the dues had been commingled. *Id.* Furthermore, Kerr and French were intentionally attempting to hide these checks from the Court. *Id.* French also states that the money was not "in the control of, or collected from the satellite business office in Gaithersburg, Maryland" and, therefore, not covered by the March 10, 2000, Order. *See,* Order, filed March 10, 2000, in consolidated Civil Nos. 1:98cv59 & 1:99cv267. French admits he violated the Court's order of April 23, 2000. Affidavit of Roger L. French, *attached to* Plaintiff's Response to Defendant's Motion for Sanctions, filed February 20, 2002, in Civil No. 1:00cv294, ¶ 9. He does not mention the February 24, 2000, Order although his actions violated its terms as well. French avers that his violation of the April 23, 2000, Order was the result of "confusion." *Id.* At the hearing on Defendant's motion for sanctions held March 25, 2002, French claimed that he never asserted a lien over these funds. Rather, he stated that his letter to Bleynat merely served as a reminder of his statutory rights. This argument is, at best, disingenuous.

The Court, through the efforts of a number of Congressional Medal of Honor winners, was able to fashion a resolution to these problems. Memorandum and Order filed May 3, 2000, in consolidated Civil Nos. 1:98cv59 & 1:99cv267. As a part of this resolution, as well as in several other orders, the Court delegated to an interim board of directors the initial responsibility for determining which, if any, of the various attorneys involved in this case were to be paid out of CFI funds. Orders, filed April 14, 2000, May 3, 2000, August 16, 2000, in consolidated Civil Nos. 1:98cv59 & 1:00cv267. Despite this delegation of authority and before any ruling of the interim board, French filed the lawsuit, *French v. Chosin Few, Inc.* ("the *French* case"), in the state Superior Court of Suffolk County, Massachusetts, on June 20, 2000. French was still the attorney of record for CFI in the consolidated cases in this Court when he filed the *French* case.

CFI removed that case to the United States District Court for the District of Massachusetts and moved to transfer that case to this Court. In opposing the Defendant's motion to transfer, French made a series of factual allegations and misrepresentations regarding the status of the underlying litigation which this Court has previously described as "outrageous." Order, filed November 21, 2000, in consolidated Civil Nos. 1:98cv59 & 1:99cv267, at 4. French specifically denied that this Court had any orders or motions outstanding which would impact the substance or procedure of his claim for attorney fees.

French now avers that none of the contentions he made to the federal court in Massachusetts are false. He states, "My reference to the Court in Massachusetts that there was no litigation in North Carolina referred to the fact, correctly, that there was at that time no motion to confirm or any other such litigation involving

myself." French Affidavit, *supra*, ¶ 24. Regarding his failure to withdraw as the attorney of record for CFI in the consolidated cases, French avers that he did attempt to withdraw, but that CFI would not permit him to do so. *Id.*, ¶ 25. He has failed to produce any documentation in support of that allegation. Considering that French had filed a response with this Court claiming his rights to have this fee dispute settled only eight days before the entry of the November 21, 2000, Order, his contemporaneous representations to the Massachusetts federal court were intentionally deceptive. French's Opposition to Motion of the Chosin Few to Confirm Interim Board's Decision on Attorney's Fees and to Award Sanctions, filed November 13, 2000, in consolidated Civil Nos. 1:98cv59 & 1:99cv267.

One of the claims French made in the *French* case was that the actions of the Chosin Few violated the Massachusetts Unfair and Deceptive Trade Practices Act. Mass.Gen.Stat. Ch. 93A. CFI has produced a letter faxed from Richard Knoebel and Jack Hessman to French on February 10, 1998, immediately prior to a settlement conference in the United States District Court for the District of Massachusetts in the original *Chosin Few, Inc. v. Scott* case. Exhibit 6, *attached to* Defendant's Reply to Plaintiff's Response to Motion for Sanctions, filed in Civil No. 1:00cv294. This letter indicates plainly that the substance of the dispute underlying all of this litigation was the legitimacy of the purported board meetings held by either faction. *Id.* As such, French's claim that he was under the impression that he had been hired by the authorized officers of the corporation is not credible. French Affidavit, *supra*, ¶ 4.

CFI has submitted evidence of legal costs exceeding $112,000 incurred as a result of French's conduct. Defendant's Response to Court's December 7, 2001, Order, filed January 11, 2002. Although French contests whether some of those costs are properly allocated to him, his primary factual presentation concerning the amount of fees is that he lacks the ability to pay. He submits evidence, reviewed *in camera*, of his financial status. Sealed Affidavit of Roger L. French, filed February 20, 2002. Without revealing the details of French's submissions, he attempts to show that he currently lacks the ability to pay the substantial fees claimed by CFI. It is clear that French's current income is insufficient to pay the full request made by CFI; however, it is impossible to calculate French's current net worth due to the lack of specific information about the available equity in his home.

## II. LEGAL STANDARDS

 CFI argues that it is entitled to an award of attorney's fees for actions taken by French or with his advice throughout this litigation. It bases these claims pursuant to Federal Rule of Civil Procedure 11, 28 U.S.C § 1927, and the Court's inherent authority. Federal Rule of Civil Procedure 11 provides in pertinent part:

> By presenting to the court . . . a pleading . . . an attorney or unrepresented party is certifying that to the best of the person's knowledge, information and belief, formed after an inquiry reasonable under the circumstances—
>
> (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
>
> (2) the claims . . . are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law . . . ;
>
> (3) the allegations and other factual contentions have evidentiary support or, . . . are likely to have evidentiary sup-

port after a reasonable opportunity for further investigation or discovery . . . .

Fed.R.Civ.P. 11(b). The last two prongs of this test require an attorney to make a reasonable pre-filing investigation into the factual and legal contentions set forth in a pleading. *Brubaker v. City of Richmond*, 943 F.2d 1363, 1373 (4th Cir.1991). "An objective test is used to determine the reasonableness of a lawyer's prefiling investigation." *In re Kunstler*, 914 F.2d 505, 514 (4th Cir.1990) (citations omitted). "That is, where there is *no* factual basis for a plaintiff's allegations, the complaint violates Rule 11's factual inquiry requirement." *Brubaker, supra.* Likewise, "[a] prefiling investigation of the law will not pass muster under Rule 11 where the complaint has absolutely no chance of success under the existing precedent." *Id.* (citations omitted). Under the first prong of the *Kunstler* analysis, "in order to determine 'improper purpose,' a district court judge must judge the conduct of counsel under an objective standard of reasonableness rather than assessing subjective intent." *Kunstler, supra,* at 518 (citations omitted). "It is appropriate to consider the *signer's* subjective beliefs to determine the signer's purpose . . . ." *Id.,* at 519. "Circumstantial facts surrounding the filing may also be considered as evidence of the signer's purpose." *Id.*

■ Title 28 U.S.C. § 1927 provides in pertinent part that

[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927. "Pursuant to § 1927, three substantial requirements must be met before liability may be imposed: (1) a multiplication of proceedings by an attorney; (2) conduct that can be characterized as unreasonable and vexatious; and (3) a resulting increase in the cost of the proceedings." *Harris v. Marsh,* 679 F.Supp. 1204, 1381 (E.D.N.C.1987) *vacated in part on other grounds* 123 F.R.D. 204 (E.D.N.C.1988), *aff'd in part, rev'd in part, Blue v. U.S. Dept. of the Army,* 914 F.2d 525 (4th Cir.1990). A subjective finding of bad faith is required in order to impose sanctions. *Chaudhry v. Gallerizzo,* 174 F.3d 394, 411 n. 14 (4th Cir.1999); *Brubaker,* 943 F.2d at 1382 n. 25 ("Like an award under the court's inherent power, section 1927 also requires a finding of counsel's bad faith as a precondition to the imposition of fees"). However, such finding must be based on objective evidence as well as the attorney's representations about his own intentions. *See, generally, Blue,* 914 F.2d at 540–43 (reviewing objective evidence to determine subjective good faith of attorneys on appeal of sanctions awarded under both Rule 11 and 28 U.S.C. § 1927).

■ As for the Court's inherent authority to sanction French for his conduct,

[T]here are ample grounds for recognizing . . . that in narrowly defined circumstances federal courts have inherent power to assess attorney's fees against counsel even though the so-called "American Rule" prohibits fee shifting in most cases . . . . [T]hese exceptions fall into three categories . . . . [The first category does not apply to this case] . . . Second, a court may assess attorney's fees as a sanction for the willful disobedience of a court order . . . . Third . . . a court may assess attorney's fees when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons. In this regard, if a court finds that fraud has been practiced upon it, or that the very temple of justice has been defiled, it may assess attorney's fees against the responsible party, as it may when a party shows bad faith by delaying or

disrupting the litigation or by hampering enforcement of a court order.

*Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991) (internal citations and quotations omitted). An award of attorney's fees pursuant to the Court's "invocation of the inherent power would require a finding of bad faith." *Id.*, at 49. CFI argues that French's conduct is sanctionable in three respects.

### III. CONCLUSIONS

First, CFI argues that French's claim for treble damages under Massachusetts' Unfair and Deceptive Trade Practices Act was not well grounded in law or fact and was presented for an improper purpose. Mass.Gen.Laws. Ch. 93A. In support of CFI's argument, the organization makes essentially the same arguments it made in its motions to dismiss and for summary judgment on that claim in the *French* case. *See generally,* Defendant's Motions to Dismiss and for Summary Judgment, filed in Civil No. 1:00cv294. The Court finds that from the beginning of this litigation, French knew there was a good faith dispute over the control of the board of directors of CFI. Because French knew of this dispute, he knew or should have known that the authority of the Kerr faction or any representative thereof to bind the organization to employ him could reasonably be called into question. As such, he knew that the facts were not as he alleged and that the true facts did not include any conduct which would rise to the level of wrongdoing required under the Act. *See, Wasserman v. Agnastopoulos*, 22 Mass.App.Ct. 672, 679, 497 N.E.2d 19 (1986) ("for conduct to violate the standard of [the Massachusetts Unfair and Deceptive Trade Practices Act] ... it must be unethical or unscrupulous ...").

French now claims that the conduct of CFI's interim board of directors in reviewing and denying his claim for attorney's fees in compliance with this Court's Orders was also the basis for his claim. Plaintiff's Response to Defendant's Motion for Sanctions, at 9; French Affidavit *attached thereto,* ¶21. He has not produced any evidence—other than his own, self-serving affidavit—in support of this position and the Court does not afford it any weight.

CFI's second claim for attorney's fees arises out of French's conduct in filing the Massachusetts state court action and in opposing its removal to the federal court and its subsequent transfer to this District. This claim is based on both 28 U.S.C. § 1927 and the inherent authority of this Court to enforce its orders and effectuate its judgments. The Court finds that by these filings, French has unreasonably and vexatiously multiplied the proceedings and has hampered this Court's ability to enforce its orders. This conduct has caused CFI to incur substantial costs in removing, opposing French's motion to remand, and transferring the lawsuit.

French responds that as he interpreted the Court's Orders of April 3, 2000, April 14, 2000, and May 3, 2000, filed in the consolidated civil actions, he was entitled to have his fee claim settled in court, but that this Court would not hear those claims. French argues, "[i]n this climate, and under these circumstances, it was not unreasonable for French to conclude that he should litigate his entitlement to payment from CFI for legal services rendered in a different civil action and a different forum." Plaintiff's Response, *supra,* at 4.

By these Orders, this Court sought (1) to avoid or postpone any further disputes which might destroy the ability of the interim board of directors to rehabilitate CFI for the good of its members and (2) to allow the interim board to review French's claims and determine whether or not CFI owed him the fees he claimed—subject to a final review by this Court. Nothing in

these Orders purports to deny French the right to have the attorney's fee issue settled in court. Likewise, nothing in these Orders indicates that this Court would decline to exercise the supplemental jurisdiction it has specifically taken and consistently maintained over claims relating to the initial CFI dispute at issue in the original case. Judgment, filed January 7, 1999, in Civil No. 1:98cv59, at 5. It was French who successfully urged this Court to exercise supplemental jurisdiction over the initial case. Plaintiff's Memorandum on Subject Matter Jurisdiction, filed November 17, 1998, in Civil No. 1:98cv59. French, working with another attorney, successfully removed the interpleader action to this Court asserting that the injunction granted in that case was an attempt to modify this Court's Judgment and acknowledging that this Court expressly retained jurisdiction over that case. Notice of Removal, filed in Civil No. 1:99cv267. In the Order filed May 3, 2000, the Court explicitly retained jurisdiction over CFI to prevent the two factions from re-emerging on the interim board. Order, filed May 3, 2000, in consolidated Civil Nos. 1:98cv59 & 1:99cv267, at 13. Because the *French* case called on the Court to determine the relative authority of the two board meetings in the spring of 1997, it created a substantial likelihood that the factions could re-emerge within the organization. After the interim board initially ruled on French's claims, the Court specifically granted him 15 days in which to present these claims before the undersigned. Order, filed November 21, 2000 in consolidated Civil Nos. 1:98cv59 & 1:99cv267, at 5–6. That Order also noted the Court's jurisdiction over this matter. *Id.*

Given that French has consistently ignored the Court's primary goal of maintaining the CFI as an organization for the benefit of its membership, it is not surprising that he reached his conclusions regarding the meaning of this Court's Orders. His conclusions were, however, entirely unreasonable. His actions based on these conclusions were either made with the intention of violating the Court's orders or with a conscious disregard for those orders. As such, the Court finds that French acted in bad faith in filing the *French* case in Massachusetts and in opposing its removal and transfer to this Court.

The third aspect of French's conduct for which CFI seeks sanctions is his conduct in the consolidated litigation. The Court finds that French's advice or direct action led to (1) the purported exercise of "emergency action" by the Kerr faction of the Board, (2) the filing of the interpleader action by The Hometown Bank, (3) entry of a preliminary injunction in that case, (4) the postal dispute between Kerr and Scott, (5) the inability of the two factions to select either a third member of the nominating committee or a party to conduct the ballot count, (6) the publication of material in the *News Digest* in violation of the Consent Judgment, and (7) the loss of liability insurance for CFI's board of directors.[2] Furthermore, French orchestrated a deliberate attempt to circumvent this Court's February 24, 2000, Order to account for all of the Chosin Few's assets and place them into an escrow account. Not all of this conduct created additional legal expenses for CFI, but all of it harmed the organization and violated the Court's orders. CFI will be awarded only those costs and fees which are the result of French's conduct.

In response, French avers that he acted at the request of Kerr and Santor. French Affidavit, ¶ 8. French did not ap-

---

**2.** Some of these findings are based on factual presentations already before the Court in the

motion for summary judgment in the *French* case.

pear at the show cause hearing in March 2000 where these gentlemen averred that they acted on French's advice. Subsequently, he has obtained affidavits from these men that state that he instructed them to follow this Court's Orders at all times. Although the record contains numerous letters from these gentlemen to French, it is conspicuously void of letters from French to either of them. As such, the Court finds French's allegations to be unsubstantiated and lacking credibility. Regardless, it was French who had the duty to insure that his clients understood and complied with the Court's Orders. *See, Higginbotham v. KCS Int'l, Inc.,* 202 F.R.D. 444, 455 (D.Md.2001) ("A lawyer breaches his professional obligation as an officer of the Court when he advises a layperson to disregard or to not fully obey a valid [order]"); *Blair v. Shenandoah Women's Center, Inc.,* 757 F.2d 1435, 1438 (4th Cir.1985) ("We emphatically reject any suggestion that a lawyer may shield his transgressions behind the simplistic plea that he only did what his client desired."). French's remaining arguments regarding this conduct all revolve around his· tortured and overly literal interpretations of the Court's Orders.

## IV. SANCTIONS

### A. Amount of Sanctions

Based on the facts and appropriate legal standards, sanctions against French for his conduct throughout this litigation are warranted. Under the standard of *In re Kunstler,* the Court must look at four factors in setting an award of attorney's fees under Rule 11: "(1) the reasonableness of the opposing party's attorney's fees; (2) the minimum to deter; (3) the ability to pay; and (4) factors related to the severity of the Rule 11 violation."[3] *Kunstler,* 914

F.2d at 523 (footnote added). Section 1927 of Title 28, United States Code, "creates liability only for *excess* costs, expenses and attorneys' fees reasonably incurred because of the attorney's unreasonable and vexatious multiplication of the proceedings." *Browning v. Kramer,* 931 F.2d 340, 344 (5th Cir.1991). In other words, those costs, expenses, and attorney's fees which are the proximate result of an attorney's misconduct are recoverable.

All totaled, CFI seeks $112,048.18 in fees and costs. Exhibit 1, Affidavit of Gary L. Beaver, *attached to* Defendant's Response to Court's December 7, 2001 Order, filed January 11, 2002, in Civil No. 1:00cv294. Of this, $73,909.12 is attributable to fees and expenses incurred by Gary L. Beaver (Beaver) and his law firm in representing CFI in all of the cases. *See, id.,* at Exhibit 1A. An additional $2,399.99 represents the fee of E. Osborne Ayscue, Jr. (Ayscue), retained as an expert in the field of legal malpractice by CFI. *Id.,* at Exhibit 1B. The Boston law firm of Foley Hoag & Elliot (Foley Hoag) charged CFI $23,622.38 for its services in connection with the proceedings to remove and transfer the *French* case to this District. *Id.,* at Exhibit 2. Finally, Edward Bleynat (Bleynat) incurred $12,116.69 in fees and costs in coordinating the efforts of CFI's other counsel in the consolidated cases and the *French* case until French's appeal of the removal and transfer order to the First Circuit Court of Appeals was dismissed. *Id.,* at Exhibit 3. CFI provides detailed invoices and affidavits in support of these bills. *See, id.,* at Exhibits 1–3. Bleynat, Beaver, and Ayscue performed their services at rates reduced from their normal fee. *Id.,* at Exhibits 1, 1B, and 3.

---

3. The Court is guided by the same framework in determining the amount of sanctions under the Court's inherent authority.

## B. Reasonableness of CFI's fees

CFI requests payment only for that portion of its legal bills which came as a direct result of French's violations of Rule 11, 28 U.S.C. § 1927, or this Court's Orders. *Id.* The Court has made an independent review of the invoices submitted by CFI's counsel French presented two specific objections to these invoices at the hearing. He objects to the inclusion of time Gary Beaver spent researching possible reincorporation of CFI in North Carolina.[4] Beaver averred that all time included in his invoice was necessary to respond to French's sanctionable conduct. *Id.,* at Exhibit 1, Beaver Affidavit, at 3. French also objects to the inclusion of time Bleynat spent traveling to and attending CFI's board of director's meeting in Chicago, Illinois, on August 10–11, 2000. Bleynat averred that his presence was required at that meeting in order to respond to any questions the board might have regarding the status of the litigation, especially the *French* case. *Id.,* at Exhibit 3, Bleynat Affidavit, at 5. French has not presented any evidence to rebut these contentions. The Court finds that these fees were reasonable in light of the context of the litigation and in response to French's conduct.

French objects generally that CFI's attorneys spent an unreasonable amount of time and effort in pursuing these sanctions. Fees incurred in pursuing sanctions are expressly allowed by the terms of Rule 11, but are subject to the reasonableness requirement of the rule. Fed.R.Civ.P. 11(c)(1)(A). The Fourth Circuit has stated that, "it is appropriate for the court to consider ... whether the large amount of time devoted to the pursuit of sanctions was warranted...." *Kunstler,* 914 F.2d at 523. As is evident from this Order,

French's violations were numerous and egregious. The Court finds that the amount of time spent by CFI's attorneys in pursuing these sanctions was reasonable. The Court also notes that Beaver discounted his hourly billing rate from $195–210 per hour to $150 per hour and that Bleynat discounted his hourly rate from $140–160 per hour to $125 per hour in regard for the membership and purpose of CFI. Exhibit 1, Beaver Affidavit, *attached to* Defendant's Response, *supra,* at 4; Exhibit 3, Bleynat Affidavit, at 5. Likewise, Ayscue charged a "modified pro bono rate" of $225 per hour for his services as a malpractice expert. *Id.,* at Exhibit 1B. The Court finds the reasonable amount of attorney's fees owed for services performed by Foley Hoag to be $23,622.38.

The Court finds reasonable attorney's fees for the services of Gary Beaver and his firm to be $73,909.12. Of this amount, $10,384.37 is specifically attributable to French's Rule 11 violation; $5,250.00 is specifically attributable to his § 1927 violation; the $58,274.75 remaining for Beaver's fees and expenses are attributable to French's conduct in violation of the Court's Orders. However, French's conduct in violation of § 1927 was also a violation of the Court's Orders and is sanctioned for both reasons.

The Court finds reasonable attorney's fees for the services of Edward Bleynat to be $12,116.69. All of these fees are attributable both to sanctions for French's § 1927 violations and sanctions pursuant to this Court's inherent authority.

■ French also argues that he should not be required to pay the fee for Ayscue, the malpractice expert, since no malpractice claims were ever brought. CFI re-

---

**4.** It appears from Beaver's invoice that this research was one of four tasks which took a total of 24 minutes on August 11, 2000. Assuming each of these tasks took an equal amount of time, that amounts to $15 in services. *See* Exhibit 1A, *attached* to Defendant's Response.

sponds that hiring a malpractice expert with regard to French's conduct was a reasonable response to his claims in the *French* case. The Court finds that hiring a malpractice expert was a reasonable and necessary step in light of the claims made in the *French* case and the defenses or possible counterclaims CFI might raise in response. In fact, the factual basis for the possible malpractice claims is the same as the basis for these sanctions. The Court has the power to award reasonable expert witness fees for violations of its inherent authority, particularly where those fees are the direct result of the sanctionable conduct. *Barnes v. Dalton*, 158 F.3d 1212, 1215 (11th Cir.1998). The Court find reasonable expert witness fees for Ayscue in the amount of $2,399.99.

### C. Minimum to Deter

Given the severity and pervasiveness of French's conduct, and especially in light of his bad faith in violating 28 U.S.C. § 1927 and the Court's inherent authority, the Court finds that the entire amount of CFI's attorney's fees attributable to French's conduct is the minimum necessary to deter similar future misconduct.

### D. Ability to Pay

French argues that the fees assessed against him must be reduced because he lacks the ability to pay. "Inability to pay what the court would otherwise regard as an appropriate sanction should be treated as reasonably akin to an affirmative defense, with the burden upon the parties being sanctioned to come forward with evidence of their financial status." *Kunstler*, 914 F.2d at 524 (citations omitted); *see also, Gaskell v. Weir*, 10 F.3d 626, 629–30 (9th Cir.1993); *White v. General Motors, Corp., Inc.*, 908 F.2d 675, 684–85 (10th Cir.1990). Where the sanctioned party

does not present credible probative evidence of his ability to pay, the Court will not reduce an award of attorney's fees. *See, Gaskell, supra.*

The evidence French has supplied to the Court for *in camera* review, if believed, shows that he does not presently have the financial ability sufficient to pay a substantial award. As noted above, it is impossible to calculate French's net worth from the information submitted. French's Memorandum of Law with Respect to Submission of Personal Income Tax Returns, filed under seal April 12, 2002, at 3–4. Based on his course of conduct both with this Court and with the other counsel and parties to all of the underlying litigation, French has exhausted all credibility.

Given French's educational background and legal training, he has the ability to produce an income stream in the future sufficient to make payments toward this award. Therefore, the Court will leave the full award intact, to be paid in installments over time if necessary. As such, in payment of Foley Hoag's fee, CFI is entitled to $23,622.38, pursuant to § 1927 and the Court's inherent authority; Gary L. Beaver and the law firm of Adams, Kleemeier, Hagan, & Fouts, P.L.L.C., are entitled to $10,384.37, for the Rule 11 violations, $5250.00, for the § 1927 violations alone, and $58,274.75, under both § 1927 and the Court's inherent authority, for a total of $73,909.12; Edward Bleynat and the law firm of Ferikes & Bleynat, P.L.L.C., are entitled to fees in the amount of $12,116.68, all attributable to § 1927 and the Court's inherent authority; and the Chosin Few, Inc., are entitled to recover expert fees in the amount of $2,399.99, again pursuant to § 1927 and the Court's inherent authority.[5] All totaled, CFI is entitled to recover fees from French in the

---

**5.** The record indicates that Foley, Hoag & Elliot, and Ayscue have been paid for their services. As such, reimbursement should be made to CFI and not to those attorneys.

amount of $112,048.17. Any unpaid portion of this award shall accrue interest at the prescribed statutory rate. 28 U.S.C. § 1961.

### D. Severity of the Violation

The Court does not find that French's Rule 11 violation was made in bad faith, maliciously, or with improper purpose. His conduct in violating this Court's Orders in the original litigation and in filing and opposing the removal and transfer of the *French* case was, however, done in bad faith. Furthermore, while the Rule 11 violation has not been shown to be intentional, it was certainly done with reckless disregard for the facts known to French and the applicable Massachusetts law. As such, this factor indicates that French should be sanctioned the full amount of the reasonable fees.

### E. Further Sanction

French shall also be disbarred from any further representation of clients in the federal courts of the Western District of North Carolina without first having shown to the satisfaction of a U.S. District Court Judge of this District his willingness to abide by lawful orders of the Court and to conduct himself in accordance with the Rules of Professional Conduct of the American Bar Association and the North Carolina State Bar Association.

### V. ORDER

IT IS, THEREFORE, ORDERED that the motion filed by the Chosin Few, Inc., in Civil Nos. 1:98cv59 and 1:99cv267 to confirm the interim board's decision denying attorney's fees to Roger L. French is **ALLOWED**, and such decision is hereby **SUSTAINED**.

**IT IS FURTHER ORDERED** that the motions of the Chosin Few, Inc., for an award of attorney's fees and expenses and for sanctions are hereby **ALLOWED**.

A Judgment is filed contemporaneously herewith.

### *JUDGMENT*

For the reasons set forth in the Memorandum and Order filed herewith,

**IT IS, THEREFORE, ORDERED, ADJUDGED AND DECREED** that the Defendant, the Chosin Few, Inc., have and recover of the Plaintiff, Roger L. French, the sum of **TWENTY–THREE THOUSAND SIX HUNDRED TWENTY–TWO DOLLARS AND THIRTY–EIGHT CENTS ($23,622.38)** in attorney's fees and expenses, in reimbursement for payment of services rendered by the law firm of Foley, Hoag, and Elliot, One Post Office Square, Boston, Massachusetts, 02109, and shall be payable to Gary L. Beaver and the law firm of Adams, Kleemeier, Hagan, Hannah & Fouts, P.L.L.C., 701 Green Valley Road, Suite 100, Greensboro, North Carolina, 27408, pursuant to 28 U.S.C. § 1927 and this Court's inherent authority, with interest thereon at the prescribed statutory rate from this date until paid in full.

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that Gary L. Beaver and the law firm of Adams, Kleemeier, Hagan, Hannah & Fouts, P.L.L.C, 701 Green Valley Road, Suite 100, Greensboro, North Carolina, 2748, have and recover of the Plaintiff, Roger L. French, the sum of **SEVENTY–THREE THOUSAND, NINE HUNDRED NINE DOLLARS AND TWELVE CENTS ($73,909.12)** in attorney's fees, expenses, and Rule 11 sanctions, pursuant to 28 U.S.C. § 1927, Fed.R.Civ.P. 11, and this Court's inherent authority, with interest thereon at the prescribed statutory rate from this date until paid in full.

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that the Defendant The Chosin Few, Inc., have and

recover of the Plaintiff, Roger L. French, the sum of **TWO THOUSAND, THREE HUNDRED NINETY–NINE DOLLARS AND NINETY–NINE CENTS ($2,399.99),** in reimbursement for payment of the expert witness fee of E. Osborne Ayscue, Jr., and shall be payable to Gary L. Beaver and the law firm of Adams, Kleemeier, Hagan, Hannah & Fouts, P.L.L.C., 701 Green Valley Road, Suite 100, Greensboro, North Carolina, 27408, pursuant to 28 U.S.C. § 1927 and the Court's inherent authority, with interest thereon at the prescribed statutory rate from this date until paid in full.

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that Edward L. Bleynat, Jr., and the law firm of Ferikes & Bleynat, P.L.L.C., 21 Broad Street, Asheville, North Carolina, 28801, have and recover of the Plaintiff, Roger L. French, the sum of **TWELVE THOUSAND, ONE HUNDRED SIXTEEN DOLLARS AND SIXTY–EIGHT CENTS ($12,116.68)** in attorney's fees and expenses pursuant to 28 U.S.C. § 1927 and this Court's inherent authority, with interest thereon at the prescribed statutory rate from this date until paid in full.

**IT IS FURTHER ORDERED** that the Plaintiff, Roger L. French, pay into this Court the sum of these attorney's fees, expenses, and Rule 11 sanctions by certified check or money order to the Clerk of Court, Western District of North Carolina, 212 U.S. Courthouse, 401 West Trade Street, Charlotte, North Carolina, 28202. If Plaintiff is unable to pay the full amount imposed, he may make monthly installments in the amount of not less than **ONE THOUSAND DOLLARS ($1,000.00)** per month.

**IT IS FURTHER ORDERED** that the Clerk of Court make disbursements on a semi-annual basis to the recipients named above on a *pro rata* basis until each is paid in full.

**IT IS FURTHER ORDERED** that Roger L. French is hereby permanently **DISBARRED** from appearing as attorney of record in any case filed in the United States District Court for the Western District of North Carolina unless permitted to do so by Court Order as set out in the Memorandum and Order filed herewith. The Clerk of Court is directed to send copies of this Memorandum and Order to the North Carolina State Bar Association and the Massachusetts Bar Association.